UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SHAUNTELLE L.,<br><br>              Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security*,<br><br>              Defendant. | Case No. 2:23-cv-0326-BNW<br><br>**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION** |

Presently before the Court is Plaintiff's Motion for Reversal and Remand. (ECF No. 14). Defendant filed a response in opposition (ECF No. 19) and a Countermotion to Affirm the Agency Decision (ECF No. 18). Plaintiff then filed a Reply in support of her motion. (ECF No. 20). For the reasons stated below, the Court affirms the Commissioner's final decision.

**I.    Background**

On December 12, 2019, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging an onset date of November 14, 2019. ECF No. 9-1[1] at 175. Plaintiff's claim was denied initially and on reconsideration. *Id*. at 103 and 108. A telephonic hearing was held before Administrative Law Judge ("ALJ") Cynthia R. Hoover on March 15, 2022. *Id*. at 43-67. On May 17, 2022, ALJ Hoover issued a decision finding that Plaintiff was not disabled. *Id*. at 20-35. On January 5, 2023, the Appeals Council denied review. *Id*. at 5. On March 21, 2023, Plaintiff commenced this action for judicial review under 42 U.S.C. § 405(g). *See* Compl. (ECF No. 5).

///

---

* Martin O'Malley has been substituted for his predecessor in office, Kilolo Kijazaki, pursuant to Federal Rule of Civil Procedure 25(d).

[1] ECF No. 9-1 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 9-1)). All citations to the Administrative Record will use the CM/ECF page numbers.

## II. Discussion

### A. Standard of Review

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### B. Disability Evaluation Process and the ALJ Decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Moreover, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then a finding of disabled is made. *Id.* § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed an SGA. If the individual has the RFC to perform her

past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). ECF No. 9-1 at 22-35.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 12, 2019, the application date. *Id*. at 22.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: traumatic brain injury, degenerative disc disease and hearing loss (20 CFR 416.920(c)). *Id*. at 22-26.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). *Id*. at 26.

The ALJ then found that Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 20 CFR 416.967(a) except she can lift 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 2 hours and can sit for 6 hours. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. She can occasionally stoop, kneel, crouch or crawl. She can frequently reach overhead with the right upper extremity. She will have to avoid extreme cold, wetness, loud noise (as defined by the Selected Characteristics of Occupations), vibration, and hazards such as unprotected heights and dangerous moving machinery like chainsaws and jackhammers. *Id*. at 27-33.

At step four, the ALJ determined that Plaintiff could perform past relevant work as a survey worker, survey worker supervisor and a taxicab dispatcher. *Id*. at 33.

At step five, the ALJ then concluded that Plaintiff was not under a disability at any time since December 12, 2019. *Id*. at 35.

**III. Analysis**

In the present case, the ALJ considered Plaintiff's medically determinable mental impairments of anxiety, neurocognitive disorder, depression, and trauma-and stressor-related disorder at step two. ECF No. 9-1 at 23-26. The ALJ found these impairments non-severe and "singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities[.]" *Id.* at 23. In making these findings, the ALJ considered the reports of Dr. Jack Araza, Ph.D., and Dr. J. Virk, M.D. finding them persuasive because they were consistent with the medical and other evidence in the record. *Id.* at 23-4. The ALJ also considered the other medical reports that included mental status examinations and noted that they were consistent with Dr. Araza and Dr. Virk's reports. *Id.* at 24.

As part of her step two analysis, the ALJ considered the "paragraph B" criteria which evaluates the broad functional areas of mental functioning.[2] *Id.* In each of the four areas, the ALJ found mild limitations. *Id.* at 24-26. The ALJ clarified that the "paragraph B" limitations are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3. *Id.* at 26. Finally, the ALJ concluded step two by stating: "The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis." *Id.*

In assessing Plaintiff's RFC (which included no mental limitations), the ALJ expressly considered Plaintiff's symptoms related to her mental impairment: anxiety, PTSD, depression, and bi-polar. *Id.* at 27. She considered Plaintiff's testimony regarding her functional limitations including problems with sleeping, inability to tend to her personal care and grooming, memory,

---

[2] The four areas are: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting or maintaining pace; and 4) adapting or managing oneself. *See* 20 CFR, Part 404, Subpart P, Appendix 1.

concentration, understanding and ability to complete tasks. *Id.* The ALJ found that Plaintiff's allegations were not consistent with the medical evidence and other evidence in the record. *Id.* at 28. Considering the evidence in the record, the ALJ found that the objective medical findings did not support limitations greater than those assessed in the RFC. *Id.*

### A. The RFC did not fail to account for Plaintiff's mental limitations

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and is the product of legal error because "the ALJ failed to reconcile her step two findings of mild mental limitations with the RFC, which contains no mental limitations whatsoever." ECF No. 14, Plaintiff's Motion to Remand, at 8. However, Plaintiff's argument that there is "no indication in the ALJ's RFC discussion that Plaintiff's mild mental impairments were even considered in crafting the RFC" is belied by the record.

First, the ALJ concluded her step two analysis by acknowledging that her RFC "reflects the degree of limitation" she found in the paragraph B mental function analysis. *Id.* at 26. Unfortunately for Plaintiff, that limitation was found to be minimal. *Id.*

Second, at least one other court has found that the identical sentence the ALJ used in this determination, "[t]he following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis," is enough to incorporate by reference the evidence supporting her findings at step two into her RFC analysis. *Webb v. Colvin*, 2:12-cv-592-GMN-PAL, 2013 WL 5947771 at *12 (D. Nev. Nov. 5, 2013) (an ALJ is required to discuss and evaluate evidence that supports her conclusion but is not required to do so under any specific heading) (citing *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001)).

Third, although the ALJ in this case, like the ALJ in *Webb*, did not "extensively discuss" Plaintiff's mental impairments at step four, she "thoroughly discussed the evidence supporting her findings at step two," incorporated them into her RFC analysis and specifically considered the mental limitations evidence in both Plaintiff's testimony and the objective medical evidence in her RFC analysis. *Webb*, 2013 WL 5947771 at *12. The ALJ reasonably found Plaintiff's subjective symptom statements less reliable given their inconsistencies with the objective medical evidence, her improvements with treatment, and her activities of daily living. ECF No. 9-1 at 27-

31. In the section justifying her RFC, the ALJ cited multiple consistent instances in the medical records that supported her decision not to find mental limitations. For example:

- Plaintiff testified that she had been free from methamphetamine for six months. *Id.* at 24.
- Mental status exams showed that she was well-dressed, friendly, cooperative maintained a normal mood and appropriate affect. *Id.* 24, 29, 30, 32 (citing 668, 670, 672, 690).
- She spoke normally, had no delusions, was oriented and attentive, showed good memory and recall, had average insight and fair judgment. *Id.* at 24, 28 (citing 73, 90, 320, 325, 340, 690).
- She scored a 28 out of 30 on a mini-mental status exam *Id.* at 28 (citing 305).
- Treatment notes indicated that medications had been effective in controlling Plaintiff's symptoms. *Id.* at 29 (citing 666, 668, 670, 672).

Clearly, the ALJ considered Plaintiff's minimal mental impairments. She concluded that they did not result in disabling symptoms and limitations that prevented her from work. *Id.* at 33. As a result, Plaintiff has failed to demonstrate the ALJ's RFC determination was the product of legal error. Instead, the Commissioner has shown that the ALJ's RFC determination was supported by substantial evidence. In turn, the Court denies Plaintiff's motion to reverse and remand and grants Defendant's countermotion to affirm the agency decision.

## IV.  Conclusion

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reversal and Remand (ECF No. 14) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Countermotion to Affirm the Agency Decision (ECF No. 18) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter judgement **AFFIRMING** the decision of the Commissioner.

DATED: March 19, 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE